IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LARRY HUNTER | ) | |
| | ) | |
| v. | ) | NO. 3:12-0916 |
| | ) | |
| METROPOLITAN GOVERNMENT OF NASHVILLE | ) ) | |

TO: Honorable Todd J. Campbell, District Judge

# REPORT AND RECOMMENDATION

By Order entered December 12, 2013 (Docket Entry No. 34), the Court referred the Defendant's Motion for Summary Judgment (Docket Entry No. 20) to the Magistrate Judge for a report and recommendation. For the reasons set out below, the Court recommends that the Motion for Summary Judgment be denied in part and granted in part.

## I. BACKGROUND

The plaintiff is a resident of Nashville, Tennessee, and was formerly employed by the Metropolitan Government of Nashville and Davidson County ("Metro") as a maintenance and repair worker at the Tennessee State Fairgrounds/Nashville Expo Center ("Fairgrounds"). He brought this action against Metro on September 7, 2012, alleging that he was terminated from his employment in violation of the Americans with Disabilities Act as amended by the ADA Amendments Act

("ADAAA"), 42 U.S.C. § 12111(5). He seeks damages, reinstatement and other injunctive relief. The action is currently set for a trial by jury on December 16, 2014.

The plaintiff was hired by Metro on March 25, 2009, into the position of Maintenance and Repair I ("Maintenance I") and worked on the day shift. His supervisor was David Lewis ("Lewis"). Pursuant to the customary management practice at the Fairgrounds, the plaintiff was initially viewed as a "probationary" employee. The probationary period at the Fairgrounds was not for a set period of time but lasted until the probationary employee exhibited to his supervisor that he could perform the expected job duties. The probationary status at the Fairgrounds had no effect on an employee's pay or benefits. On June 26, 2009, the plaintiff's probationary status ended and he was made a permanent employee along with two other Maintenance I employees.

On February 22, 2011, the plaintiff suffered an on-the-job injury to his left shoulder that limited his ability to perform some job duties. He was treated by a physician and was issued medical restrictions on his job duties. See Docket Entry No. 29-1. The plaintiff asserts that his job duties at the Fairgrounds were modified to provide him with light duty work duties but that Lewis made statements on several occasions indicating that he was unhappy with the plaintiff's work restrictions. On April 6, 2011, the plaintiff was assigned the task of weed eating by his crew leader. After a short period of time, he stopped weed eating because he felt unable to complete the task due to his shoulder injury and went to see Lewis about the matter. The meeting became heated and, ultimately, Lewis continued the meeting in the office of Fairgrounds Executive Director Buck Dozier ("Dozier") because Lewis believed the plaintiff was being insubordinate and refusing to follow orders. Dozier then directed the plaintiff to go home for the rest of the week and instructed the plaintiff to return to work the following Monday, April 11, 2011, when the matter would be discussed again. A

memorandum written by Dozier, dated April 6, 2011, was placed in the plaintiff's personnel file stating that he had been suspended without pay because of unacceptable lack of respect toward his supervisor. See Docket Entry No. 29-4.

When the plaintiff returned to work on April 11, 2011, he was informed that his position had been eliminated. The written memorandum given to the plaintiff from Dozier, dated April 11, 2011, states:

> As part of our department's budget reductions, one maintenance worker position is being eliminated. You were the last person hired and are, therefore, the person who is to be laid off, effective April 25, 2011.
>
> I am exercising my prerogative of paying you for the period beginning today through April 25, 2011. You will also be paid all accrued annual leave as well.

See Docket Entry No. 29-3, at 39.

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 11, 2011, alleging age and disability discrimination. After receiving a right-to-sue letter, dated June 11, 2012, the plaintiff filed the instant lawsuit alleging only disability discrimination. He contends that the asserted reason that he was selected for the lay off was false and was not the true reason for his selection. He alleges that he is a qualified individual under the ADAAA and that he was selected as the person to be laid off because of his disability and/or because Metro was displeased with its obligation to provide or continue to provide him with a reasonable accommodation for his disability.[1]

---

[1] In his response (Docket Entry No. 29), the plaintiff specifically states that his wrongful termination claim is the only claim he is pursuing and that he is not asserting an independent claim based upon a failure to make reasonable accommodations. See Docket Entry No. 29, at 10 n.6.

## II. MOTION FOR SUMMARY JUDGMENT

The Defendant denies that the plaintiff was discriminated against in any manner because of an actual or perceived disability. Instead, the Defendant contends that one Maintenance I position was targeted for elimination in February 2011 because of budgetary reasons and the need to cut expenses for the upcoming 2011-2012 fiscal year. The Defendant asserts that Dozier applied a "last employee in, first employee out" policy to determine which employee would be laid off and that the plaintiff was chosen as the employee to be laid off because Kristi Harris, the Human Resources Coordinator at the Fairgrounds, identified him to Dozier as the least senior of the Maintenance I employees. The Defendant contends that Harris initially determined the Maintenance I employees who had become the most recent permanent employees and discovered that three employees – the plaintiff, John Stovall, and Jerome Streeter – all became permanent employees on the same date, June 26, 2009. In order to differentiate between these three employees, she then looked at the dates on which the three men first began employment as probationary employees. Because the plaintiff was hired to begin his probationary period on March 25, 2009, nine days later than the other two employees, Harris deemed him to be the least senior Maintenance I employee.

The Defendant argues that the plaintiff cannot establish a prima facie case under the ADAAA because he cannot show that he was treated less favorably than any other similarly situated employee at the Fairgrounds. Alternatively, the Defendant argues that its reliance upon "least seniority" to select the plaintiff as the employee to be laid off is a legitimate, non-discriminatory reason for the challenged action and there is insufficient evidence to support a claim that the asserted reason was a pretext for disability discrimination. Finally, the Defendant contends that, in the event that summary judgment is denied, the plaintiff's claim for damages beyond March 7, 2013, should be

4

dismissed because evidence of untruthfulness by the plaintiff on his employment application was uncovered during discovery in this action and such evidence would have justified his termination had Metro known about the evidence.

The plaintiff contends that genuine issues of material fact exist and that the case should be submitted to a jury. Specifically, he argues that the undisputed evidence shows that two Maintenance I employees – Teresa Barrett and J.D. Felts – were hired after him yet were deemed to have more seniority than was he. He further argues that deposition testimony from the Defendant's employees casts doubt upon their explanation of how the determination of least seniority was made, that disability animus can be inferred from the timing of the plaintiff's termination, and that comments by Dozier and Lewis suggest that they harbored an animosity toward the plaintiff based upon his disability and need for a work accommodation. The plaintiff does not oppose the Defendant's argument that damages beyond March 7, 2013, are not recoverable by him. See Plaintiff's Response (Docket Entry No. 29), at 2. n.2.

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is

appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the

party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. ANALYSIS

Title I of the ADAAA provides, in relevant part:

> [n]o covered entity shall discriminate against a qualified individual with a disability on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Where, as here, the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, the plaintiff is required to establish a prima facie case. Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the challenged action. Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the defendant satisfies its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination. Id. Ultimately, the plaintiff must demonstrate that "but for" his disability, he would not have been terminated from his position. Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312, 321 (6th Cir. 2012). In Lewis, the Sixth Circuit adopted the "but for" causation standard in Age Discrimination in Employment Act cases as espoused by the Supreme

7

Court in Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).[2]

A. Prima Facie Case

The general elements a plaintiff must show to demonstrate a prima facie case of disability discrimination are:

> 1) he is disabled; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) he suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

Whitfield v. Tennessee, 639 F.3d 253, 259 (6th Cir. 2011).[3] When the adverse action involved is the loss of the plaintiff's job because of a work force reduction in which the plaintiff's position is eliminated or he is not replaced, the fifth element of the prima facie case is modified and requires the plaintiff to show additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. See Geiger v. Tower

---

[2] The Sixth Circuit in Lewis analyzed the language of Section 12112(a) that was contained in the pre–2008 version of the ADA and which prohibited discrimination "because of an individual's disability." The current language of Section 12112(a) prohibits discrimination "on the basis of" an individual's disability. See 42 U.S.C. § 12112(a). Neither party argues that the well-settled burden shifting standards and the "but-for" standard do not apply in this action, and the plaintiff adopts the "but for" standard. See Plaintiff's Response in Opposition (Docket Entry No. 29), at 13. Accordingly, the Court relies on the continued authority of Lewis and the accepted burden shifting analysis. See also Hildebrand v. Dollar Gen. Corp., 2013 WL 3761291, *6 n.10 (M.D. Tenn. July 16, 2013) (Trauger, J.)(because the parties did not contest the applicability of the Lewis "but for" standard, the Court assumed its applicability and expressly did not address whether there is any meaningful distinction between the pre and post amended language of the ADA.)

[3] The plaintiff does not assert that he has direct evidence to support his claim and, thus, the prima facie test applies.

Auto., 579 F.3d 614, 623 (6th Cir. 2009). This heightened showing can usually be met by demonstrating that a "comparable non-protected person was treated better." Williams v. Emco Maier Corp., 212 F.Supp.2d 780, 784 (S.D. Ohio 2002).

Because the Defendant does not base its summary judgment motion upon a lack of proof for any of the first four elements of the prima facie case, the Court assumes for the purpose of deciding the motion that the plaintiff has met these four elements.

The Defendant contends that the plaintiff cannot satisfy the fifth element of the prima facie case because he cannot show that he was treated less favorably than any similarly situated employee at the Fairgrounds. The Defendant essentially makes two arguments in this regard. First, the Defendant argues that, although there were a total of five Maintenance I employees at the Fairgrounds at the time the termination selection was made – the plaintiff, Jerome Streeter, John Stovall, Teresa Barrett, and J.D. Felts – the plaintiff should only be compared to Jerome Streeter and John Stovall because those were the only two employees he mentioned in his deposition as comparable employees. Second, the Defendant argues that no other Maintenance I employee had the same date of initial hire and date of permanent hire as did the plaintiff and, thus, no other employee is similarly situated to him and can be viewed as a comparable employee.

The Court is not persuaded by either argument. The reasonable and proper category of comparable employees are the other four employees who were in the Maintenance I category at the Fairgrounds. While some of the duties performed on the different work shifts may have been different, there is evidence that the three different shifts were not classified as separate employee categories and evidence that workers in the Maintenance I category had moved back and forth between shifts. See Lewis Deposition (Docket Entry No. 29-5), at pp. 14 and 17-19. Further, the

9

category of comparable employees is not conclusively defined by the plaintiff's lay testimony of whom he believed was a similar employee, and the plaintiff's response brief sufficiently identifies all Maintenance I employees as the group of comparable employees. Finally, the Defendant's asserted category of comparable employees, which it defines by reference to the initial hire dates and permanent hire dates, is unduly narrow and would be practically impossible to satisfy unless the plaintiff was fortuitous enough to have a co-worker who had the exact same initial hire and permanent hire dates but was retained. The plaintiff is not required to demonstrate an exact correlation between himself and the proposed comparators; he is only required to show that he and his proposed comparators were similar in all relevant respects. See Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 751 (6th Cir. 2012); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 412 (6th Cir. 2008); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). The plaintiff has shown that the four other Maintenance I employees who were not in the protected class are sufficiently similar to him in all relevant respects and that they were treated more favorably by not being selected to be laid off. Accordingly, the Court finds that he has satisfied the fifth element of his prima facie case.

B. Pretext

Once the plaintiff has shown a prima facie case, the analysis moves to the issue of pretext. The Defendant contends that the plaintiff was terminated from employment because the Fairgrounds decided to eliminate one Maintenance I position for the 2011-12 fiscal year due to budgetary concerns, and the plaintiff was selected to be laid off because he had the least seniority at the Fairgrounds. See Declaration of Buck Dozier (Docket Entry No. 23), at ¶¶ 5-10; Declaration of

Kristi Harris (Docket Entry No. 24). This proffered reason satisfies the Defendant's burden of production. See Shah v. NXP Semiconductors USA, Inc., 507 Fed. Appx. 483, 492 (6th Cir. Dec. 4, 2012) ("Evidence of an employer's business restructuring, which may include the elimination of jobs or termination of otherwise competent employees based on seniority, satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination."); Aldridge v. City of Memphis, 404 Fed.Appx. 29, 39 (6th Cir. Dec. 14, 2010) (defendants' elimination of plaintiffs' jobs during reorganization satisfied their burden of producing a legitimate, non-discriminatory reason for plaintiffs' termination). See also EEOC v. Sara Lee Corp., 237 F.3d 349, 354–55 (4th Cir. 2001) (employer's seniority policy favoring individuals with longer tenure at the company was "legitimate and nondiscriminatory").

The Defendant's proffer of a legitimate nondiscriminatory reason for the challenged employment action shifts the burden to the plaintiff to demonstrate that this reason was a pretext for disability discrimination. See Jones v. Potter, 488 F.3d 397, 406 (6th Cir. 2007). The plaintiff does not challenge as pretextual Metro's decision to eliminate one Maintenance I position at the Fairgrounds, regardless of who that person was, as part of the Fairgrounds 2011-2012 budget. Indeed, the plaintiff has offered no argument or evidence showing that this decision was, in and of itself, motivated by an illegitimate and illegal purpose. Instead, the focus of the plaintiff's pretext argument is a challenge to the legitimacy of the Defendant's selection of him as the employee to be laid off.

In order to show pretext, the plaintiff must demonstrate "that the proffered reason given by the Defendant (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Wexler v. White's Fine

11

Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003) (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)); Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084-85 (6th Cir. 1994). The plaintiff essentially contends that the reason given for his selection as the employee to be laid off, i.e., his lack of seniority, should not be believed.

In contrast, the Defendant argues that it had an "honest belief" in its proffered nondiscriminatory reason for selecting the plaintiff to be laid off, i.e., his lack of seniority at the Fairgrounds. The Defendant asserts that Dozier, because of the need to eliminate one Maintenance I position, asked Harris to give him the name of the Maintenance I employee who was hired the latest and that Harris provided him with the name of the plaintiff. The Defendant argues that this was the only factor he took into consideration when selecting the plaintiff as the employee to be laid off and, thus, the decision falls within the honest belief doctrine. Under the honest belief doctrine, the key inquiry is whether the Defendant made a reasonably informed and considered decision based on particularized facts before it took the challenged adverse action. See Braithwaite v. Timken Co., 258 F.3d 488, 494 (6th Cir. 2001). If the Defendant had an honest belief in making the decision to select the plaintiff as the employee to be laid off, the soundness of the decision is not a matter of concern as long as the Defendant did not make the decision based on grounds forbidden by federal law. See Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006). If the Defendant had an honest belief in its reason, the plaintiff cannot establish that the Defendant's proffered reason was pretextual even if the reason is ultimately shown to be incorrect. See Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001); Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998).

To rebut the Defendant's honest belief argument and support his showing of pretext, the plaintiff points to evidence of inconsistencies in Harris' explanation regarding the manner in which

she made the determination of seniority and evidence that Ken Sanders, the Assistant Director at the Fairgrounds, was also involved in the process. See Plaintiff's Response (Docket Entry No. 29), at 19-20. He also points out that the manner of determining seniority allegedly used by the Defendant in his case – looking in the first instance at the date when the employee was viewed as a permanent employee, as opposed to looking at the date when an employee was initially hired – leads to a situation in which two employees who had actually worked fewer total days for the Fairgrounds than he had worked were considered by the Defendant to be more senior employees. Specifically, the plaintiff contends that J.D. Felts and Teresa Barrett were hired as probationary Maintenance I employees on April 13 and 28, 2009, respectively, which was several weeks after his initial hire as a probationary employee, but they were considered to have more seniority than he had because they were made permanent employees on May 28, 2009, a few weeks earlier than the plaintiff had become a permanent employee. The plaintiff further argues that it is undisputed that there is no written policy at the Fairgrounds regarding how seniority is determined or covering lay off situations, that the Defendant's employees gave differing statements regarding the significance and history of the probationary/permanent distinction, id., at 14, n.10, and 21, that the distinction is not relevant to salary, benefits, or other factors related to human resources within the Metropolitan Government, and that there are inconsistencies in the various written statements or spreadsheets prepared by Harris relating to the dates when employees at the Fairgrounds were "hired." Id., at 16-19.

Were this the only evidence supporting the plaintiff, the Court might have found that summary judgment was appropriate for the Defendant. It is apparent from the record that the Fairgrounds used a system of a probationary period and attached a level of significance to the date upon which an employee was no longer viewed as a probationary employee but was viewed as a

13

permanent employee. Indeed, the plaintiff's own testimony was that he was told when he was hired that he had 90 days to "prove himself," even though it was not explicitly called a probationary period, and that he and employees Streeter and Stovall all went "downtown" to a Metro "benefits" office together on the day they were viewed by the Fairgrounds as permanent employees. See Plaintiff's Deposition (Docket Entry No. 20-1), at 124-25 and 208-210. Merely pointing out flaws in the Defendant's system of determining seniority and pointing to alternative methods that could have been used to calculate who was the most recently hired employee is not sufficient to negate application of the honest belief doctrine. The decisional process used by the Defendant is not required to be optimal or be free of flaws. See Smith, 155 F.3d at 807; Travers v. Cellco P'ship, 2013 WL 6048177, *4 (M.D. Tenn. Nov. 14, 2013) (Campbell, J.). As long as an employer held an honest belief in its proffered reason, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285-86 (6th Cir. 2012) (quoting Smith, 155 F.3d at 806). See also Banks v. Bosch Rexroth Corp., 2014 WL 1493677, *10 (E.D. Ky. Apr. 14, 2014) (allegations of "sloppy recording practices and miscalculations" do not negate a defendant's honest belief in challenged employment decision despite mistake about the plaintiff's actual level of absences).

In addition to this evidence, however, the plaintiff offers other evidence of pretext that raises sufficient genuine issues of material fact to require the denial of summary judgment. The plaintiff sets forth evidence that Dozier, who was the ultimate decision maker, made comments to a former Fairgrounds worker that the plaintiff was selected to lose his job because "he was lazy," "didn't do a lot of work," and his position would not need to be filled because "he wouldn't be missed." See Townes Deposition (Docket Entry No. 29-8), at 23-24. The Court is not persuaded by the

14

Defendant's arguments that these comments are either inadmissible hearsay or irrelevant stray remarks and cannot be reasonably viewed as evidencing a discriminatory animus because the remarks are not specifically directed at either a disability or a request for accommodation. See Defendant's Reply (Docket Entry No. 31), at 6-8. A reasonable jury could view this testimony as probative of why Dozier made the decision to select the plaintiff to be laid off and whether or not the plaintiff's need to be on light duty status because of his shoulder injury factored into this decision. Furthermore, Dozier's oral comments about the reason the plaintiff was selected to be laid off suggest a basis for the employment decision that is different from the asserted "least seniority" basis. An employer's changing rationale for making an adverse employment decision can be evidence of pretext. Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 592 (6th Cir. 2002).

Additionally, the plaintiff argues that a reasonable jury could infer an illicit motive from the timing of his lay off on April 11, 2011, immediately following the weed eater incident and on the very day he returned to work from the five day suspension. Evidence of a short temporal proximity between the challenged employment action and the plaintiff's protected conduct, which in this case was the plaintiff's continued need for reasonable accommodation of restricted work duties, can be probative of whether a discriminatory animus existed. See Bryson v. Regis Corp., 498 F.3d 561, 577 (6th Cir. 2007); DeBoer v. Musashi Auto Parts, Inc., 124 Fed.Appx. 387, 393 (6th Cir. Feb. 25, 2005) ("suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence."); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004).

Although there is no real factual dispute that the Fairgrounds made the decision to eliminate one Maintenance 1 position as part of its budget considerations at some point in early 2011, there is no clear evidence in the record of when the decision was made to select the plaintiff as the

employee to be laid off or even when Dozier asked Harris to determine who was the last Maintenance I employee hired.[4] If the decision was made contemporaneous to the April 6, 2011, suspension, a reasonable jury could find this temporal aspect to be probative of a discriminatory animus. Furthermore, even if it is assumed as true that Dozier made the decision in early 2011 that the plaintiff was the employee who would be laid off, there is a question of why the lay off occurred on April 11, 2011, as opposed to occurring on or about June 30, 2011, immediately before the 2011-2012 budget was slated to go into effect on July 1, 2011, given that the impetus for the elimination of the Maintenance I position in the first place was to obtain costs savings in the 2011-2012 budget, or as opposed to occurring on any other date, for that matter. Although Dozier offers an explanation for asserted costs savings that may have occurred because he accelerated the lay off,[5] reasonable minds could differ on the import to be given to this explanation, especially in light of the lack of any evidence for why accelerating the lay off only became important at some point during the period between April 6, 2011, and April 11, 2011,[6] and in light of evidence suggesting that supervisors at the Fairgrounds hoped one of the Maintenance I workers would find other employment before the budget cut was required so that no one would actually have to be laid off. See Deposition of Lewis (Docket Entry No. 29-5), at 10-14 and 54-55.

---

[4] Dozier testified that the plaintiff was identified sometime in January, February, or March as the employee to be laid off. See Deposition of Dozier (Docket Entry No. 29-4), at 36. Harris testified that she cannot remember when Dozier requested that she determine who was the employee with the least seniority. See Deposition of Harris (Docket Entry No. 29-3), at 62. Sanders could not identify a correct time frame for his memory of the events. See Deposition of Sanders (Docket Entry No. 29-6), at 33-34.

[5] See Dozier Deposition, at 39-41.

[6] Dozier testified that the decision to notify the plaintiff on April 11, 2011, that he was being laid off was made sometime in March 2011. See Dozier Deposition, at 48.

16

The Sixth Circuit has cautioned that Courts should "avoid formalism" in the application of pretext analysis "lest one lose the forest for the trees." Chen v. Dow Chem. Co., 580 F.3d 394, 400 n.4 (6th Cir. 2009). As the Sixth Circuit explained in Chen, pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." Id. Thus, the Manzer test for pretext "can be distilled to one simple requirement: The plaintiff must produce sufficient evidence that a reasonable jury could doubt the defendant's stated reasons for its actions." Burress v. City of Franklin, Tenn., 809 F. Supp. 2d 795, 815 (M.D. Tenn. 2011) (Wiseman, J.). Given the genuine issues of material fact in this case, it should be for the jury to decide whether the Defendant harbored an honest belief in its decision to select the plaintiff to be laid off or whether the plaintiff has sufficiently shown that a discriminatory animus was the reason he was selected to be laid off on April 11, 2011.

## RECOMMENDATION

Accordingly, the Court respectfully RECOMMENDS that the motion for summary judgment (Docket Entry No. 20) be DENIED to the extent that the Defendant seeks dismissal of the plaintiff's claim but be GRANTED in part to the extent that the plaintiff's claim for monetary damages beyond March 7, 2013, should be DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the

right to appeal the District Court's Order regarding the Report and Recommendation. See <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge